PEOPLE v PERLOS

PEOPLE v BROWN

PEOPLE v MILLER

PEOPLE v BENTLEY

PEOPLE v SCHOMER

Docket Nos. 99852-99856. Submitted November 17, 1987, at Lansing. Decided July 18, 1988.

Charles A. Perlos, Robert L. Brown, Marcy B. Miller, Timothy F. Bentley, and John B. Schomer were each charged in separate cases in district court with operating a motor vehicle while under the influence of intoxicating liquor. Each defendant moved to suppress the results of his or her blood alcohol test obtained by the prosecuting attorney under MCL 257.625a(9); MSA 9.2325(1)(9), which requires a medical facility or person performing chemical analysis of a blood sample taken for purposes of medical treatment from the driver of a vehicle involved in an accident to disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution of the driver regardless of whether the driver had been offered or had refused a chemical test, on the ground that the statute is unconstitutional in that it permits a search and seizure without a warrant to be performed prior to arrest and without consent in the absence of any exigent circumstances. Each of the defendants had been involved in an automobile accident, had been taken to a hospital for treatment, and had, while conscious, a blood sample removed and tested for blood alcohol level. None had been arrested prior to being subjected to his or her blood test and none gave consent

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 122 et seq., 304-308, 377-380.

Searches and Seizures §§ 38 et seq.

Admiralty in criminal case of blood-alcohol test where blood was taken despite defendant's objection or refusal to submit to test. 14 ALR4th 690.

Requiring submission to physical examination or test as violation of constitutional rights. 25 ALR42d 1407.

to turning over the blood test results to the prosecutor. In each case, the blood alcohol content was in excess of .10 percent, and the prosecutor charged each defendant with operating a motor vehicle while under the influence of intoxicating liquor. The motions of four of the five defendants were denied. One district judge granted the motion to suppress on the basis that the statute under which the results were obtained was unconstitutional. The loser in each case appealed to the Jackson Circuit Court, where the cases were consolidated. The circuit court, Gordon W. Britten, J., ruled that the statute violated the Fourth Amendment because it allowed a search and seizure without a warrant to be performed prior to arrest and without consent in the absence of any exigent circumstances and denied equal protection to all motorists in an area affecting fundamental rights. The court ordered that the evidence of the blood test results be suppressed. The people appealed by leave granted.

The Court of Appeals *held*:

1. There is sufficient governmental participation and authorization involved in the mandatory testing of blood samples and release of blood test results under the statute to constitute state action. The Fourth Amendment protections against unreasonable searches and seizures therefore apply to the taking and analyzing of blood samples and the release of the results of the analysis as provided in the statute.

2. There were no circumstances in these cases which justify the failure of the police to obtain a warrant in order to have blood samples taken and analyzed. The searches and seizures of defendants' blood in conformity with the statute constituted unreasonable searches and seizures of defendants' blood in violation of the Fourth Amendment of the United States Constitution and art 1, § 11 of the Michigan Constitution.

3. The statute at issue also violates state and federal guarantees of equal protection. There is no rational basis for denying conscious drivers who are in the hospital the same opportunity to refuse a blood test

4. The petitions and orders used by the prosecutor to compel the hospitals involved to release the names of the persons who withdrew the blood samples, the persons who analyzed the samples, and the treating physicians did not function as search warrants, since they were not used to obtain the blood test results.

5. The exclusionary rule should be applied to suppress the direct products of the Fourth Amendment violations in the present case.

6. MCL 257.625a(9); MSA 9.2325(1)(9) is unconstitutional, and

the blood alcohol test results must be excluded from evidence at the trials of the five defendants.

Affirmed.

1. SEARCHES AND SEIZURES — PRIVATE ACTION — FOURTH AMENDMENT — CONSTITUTIONAL LAW.

   The Fourth Amendment protection against unreasonable searches and seizures is a limitation on governmental action; even an unreasonable search and seizure will not violate the Fourth Amendment if it is performed by a private individual who is not acting as an agent of the government or with the participation or knowledge of any governmental official (US Const, Am IV).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — EXCEPTIONS TO WARRANT REQUIREMENT.

   Search and seizure without a warrant is per se unreasonable unless the search falls within an exception to the warrant requirement; the six basic exceptions to the search warrant requirement are: (1) consent; (2) search incident to a lawful arrest; (3) probable cause to search plus exigent circumstances; (4) hot pursuit; (5) border search; and (6) stop and frisk.

3. SEARCHES AND SEIZURES — BLOOD TESTS.

   Compulsory administration of a blood test constitutes a search and seizure of the person involved within the meaning of the Fourth Amendment (US Const, Am IV).

4. SEARCHES AND SEIZURES — SEARCH WARRANTS — EXCEPTIONS TO WARRANT REQUIREMENT — EXIGENT CIRCUMSTANCES.

   There must be probable cause to believe that an immediate search without a warrant is necessary to prevent loss or destruction of evidence in order for the exigent circumstances exception to the search warrant requirement to apply; exigent circumstances do not exist merely because it would be expedient to proceed without a warrant.

5. AUTOMOBILES — RIGHT TO REFUSE BLOOD ALCOHOL TEST — SUSPENSION OF DRIVER'S LICENSE.

   Any person who drives on Michigan highways has an absolute right to refuse a police officer's request to submit to a chemical test, but such refusal results in automatic suspension of the driver's license (MCL 257.625d; MSA 9.2325[4]).

6. AUTOMOBILES — BLOOD ALCOHOL TESTS — IMPLIED CONSENT.

   The constitutional right to refuse to consent to a search, as well as the constitutional requirement that consent be freely and

voluntarily given, precludes a finding that the act of driving on a state highway constitutes unequivocal, nonrevokable consent to be subjected to a blood alcohol test.

7. AUTOMOBILES — BLOOD ALCOHOL TESTS — IMPLIED CONSENT — ARREST.

A valid, prior arrest is an absolute condition precedent to the right of a law enforcement officer to request a person to submit to chemical tests of his blood, breath, urine, or other bodily substances under the implied consent law (MCL 257.625c; MSA 9.2325[3]).

8. CONSTITUTIONAL LAW — STATUTES — EQUAL PROTECTION — CLASSIFICATION.

There are two tests to guide judicial scrutiny of suspect legislative enactments to determine whether or not a particular enactment violates equal protection for want of proper classification of subject individuals or entities: (1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation? and (2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?

9. SEARCHES AND SEIZURES — EVIDENCE — EXCLUSIONARY RULE — "GOOD FAITH" EXCEPTION — CONSTITUTIONAL LAW.

The United States Supreme Court has ruled that the exclusionary rule does not apply in federal cases to evidence obtained through reasonable reliance on a statute authorizing administrative searches without warrants which is subsequently found to violate the Fourth Amendment; this "good faith" exception to the exclusionary rule has not been adopted in Michigan for state cases under the state constitution (US Const, Am IV).

10. AUTOMOBILES — BLOOD ALCOHOL TESTS — SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

The statute requiring a medical facility or person performing chemical analysis of a blood sample taken for purposes of medical treatment from the driver of a vehicle involved in an accident to disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution of the driver regardless of whether the driver had been offered or had refused a chemical test is unconstitutional in that it permits unreasonable searches and seizures of drivers' blood in violation of the United States and Michigan Constitutions and violates state and federal guarantees of equal protec-

tion by denying conscious drivers who are in the hospital the same opportunity to refuse a blood test as is given to conscious drivers who are not in the hospital (US Const, Am IV, Am XIV, § 1; Const 1963, art 1, §§ 1, 11; MCL 257.625a[9]; MSA 9.2325[1][9]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joe Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

*Jerome A. Susskind,* for defendants Perlos, Bentley, and Schomer.

*John M. Sims,* for defendant Brown.

*John P. Kobrin, Jr.,* for defendant Miller.

Before: KELLY, P.J., and MCDONALD and J. D. PAYANT,* JJ.

PAYANT, J. The defendants in these five cases were each charged with operating a motor vehicle while under the influence of intoxicating liquor, MCL 257.625; MSA 9.2325. Each defendant moved in the district court to suppress the results of his or her blood alcohol test obtained by the prosecutor under MCL 257.625a(9); MSA 9.2325(1)(9). Four of the five motions were denied. One district judge granted the motion on the basis that the statute under which the test results were obtained was unconstitutional. The loser in each of the five cases appealed to circuit court, where the cases were consolidated. The circuit court ruled that the statute under which the blood test results were obtained was unconstitutional. We granted leave to appeal and we affirm the decision of the circuit court.

* Circuit judge, sitting on the Court of Appeals by assignment.

Each defendant in these five cases was involved in a motor vehicle accident and was taken to a hospital for treatment. While at the hospital, each defendant had a blood sample removed and tested for blood alcohol level. The defendants were conscious at the time their blood was removed. In each case, the blood alcohol content was in excess of .10 percent. None of the defendants was arrested prior to being subjected to his or her blood test. None of the defendants gave consent to turning over the blood test results to the prosecutor. After obtaining the results of the blood tests without the use of a search warrant, the prosecutor charged defendants with operating motor vehicles while under the influence of intoxicating liquor.

The prosecutor obtained the results of defendants' blood tests under the authority of § 625a of the Michigan Vehicle Code, MCL 257.1 *et seq.*; MSA 9.1801 *et seq.* Subsection (9) of § 625a provides as follows:

> If after an accident the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for the purpose of medical treatment, the results of a chemical analysis of that sample shall be admissible in a criminal prosecution for a crime described in subsection (1) to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subsection. A medical facility or person disclosing information in compliance with this subsection shall not be civilly or criminally liable for making the disclosure.

The circuit court ruled that subsection (9) of § 625a violated the Fourth Amendment because it allowed a search and seizure without a warrant to be performed prior to arrest and without consent in the absence of any exigent circumstances. In addition, the circuit court ruled that subsection (9) denied equal protection to all motorists in an area affecting fundamental rights. The circuit court ordered that the evidence of the blood test results be suppressed.

I. DOES THE STATUTE INVOLVE SUFFICIENT GOVERN-MENTAL ACTION TO INVOKE THE FOURTH AMEND-MENT?

The Fourth Amendment protection against unreasonable searches and seizures is a limitation on governmental action. Even an unreasonable search and seizure will not violate the Fourth Amendment if it is performed by a private individual who is not acting as an agent of the government or with the participation or knowledge of any governmental official. *United States v Jacobsen,* 466 US 109; 104 S Ct 1652; 80 L Ed 2d 85 (1984). This Court has addressed the issue of governmental action in cases where a private citizen, acting with no knowledge on the part of the police, seizes evidence and then voluntarily turns the evidence over to police. *People v Langley,* 63 Mich App 339; 234 NW2d 513 (1975); *People v DeLeon,* 103 Mich App 225; 303 NW2d 447 (1981), lv den 412 Mich 935 (1982). In each of those cases, the individual was clearly not acting as an agent of the government or with the participation or knowledge of any governmental official.

The people cite numerous cases in which it was held that there was no Fourth Amendment violation where a private citizen voluntarily turned

evidence over to police. However, the present case is not analogous to the cases cited by the people. In the present case, the test results were turned over to the prosecutor under the authority of subsection (9) of § 625a, which provides in part as follows:

> The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subsection. A medical facility or person disclosing information in compliance with this subsection shall not be civilly or criminally liable for making the disclosure.

Under this provision, the state need not request that a blood test be performed but, once it has been performed, the results must be turned over to the prosecutor on request.

If the police or the prosecutor had requested that hospital personnel draw blood from defendants, the prior request would clearly constitute state action. In most states, the implied consent laws specifically provide that chemical tests may only be performed at the request of a peace officer.[1] Those statutes insure that the protections of the Fourth Amendment will be triggered. In our view, there is very little distinction for Fourth Amendment purposes between a prior request that blood be withdrawn and tested and a statutory mandate that once blood is withdrawn and tested it must be turned over to the state.

Moreover, it is the involvement of the state rather than the purpose of the search that weighs

---

[1] Mass Gen Laws Ann ch 90, § 24(1)(f) (West Supp 1988); Wis Stat Ann § 343.305 (West Supp 1987); Cal Vehicle Code § 23158(a) (West Supp 1988).

most heavily toward a finding of state action. A private citizen acting with no state participation may seize evidence even when it is for the sole purpose of aiding a prosecution. In the present case, hospital personnel are statutorily required to turn over blood test results to the state for prosecution. In addition, hospital personnel are granted statutory immunity from civil and criminal liability. We believe there is sufficient governmental participation and authorization in the present case to constitute state action. Thus, the Fourth Amendment protections are triggered by a search and seizure conducted under the authority of subsection (9) of § 625a.

## II. DOES THE STATUTE VIOLATE THE CONSTITUTIONAL PROTECTION AGAINST UNREASONABLE SEARCHES AND SEIZURES?

The Fourth Amendment to the United States Constitution and the parallel provision in the Michigan Constitution, Const 1963, art 1, § 11, protect against unreasonable searches and seizures. Both provisions have been interpreted to mean that a search and seizure without a warrant is per se unreasonable unless the search falls within an exception to the warrant requirement. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), cert den 422 US 1044; 95 S Ct 2660; 45 L Ed 2d 696 (1975); *Katz v United States,* 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967). The six basic exceptions to the search warrant requirement are: (1) consent; (2) search incident to a lawful arrest; (3) probable cause to search plus exigent circumstances; (4) hot pursuit; (5) border search; and (6) stop and frisk. *People v Marshall,* 69 Mich App 288, 293 n 5; 244 NW2d 451 (1976), lv den 397 Mich 851 (1976); *People v Castle,* 126 Mich

App 203; 337 NW2d 48 (1983), lv den 419 Mich 876 (1984).

In *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966), the United States Supreme Court said that blood tests "plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of [the Fourth Amendment]." 384 US 767.

The defendants' blood tests in the present case constitute searches and seizures subject to Fourth Amendment protection. Since the test results were obtained without warrants, the searches and seizures must fall under one of the exceptions to the warrant requirement. Since none of the defendants was placed under arrest prior to being subjected to his or her blood test, the search and seizure cannot be justified as being incident to lawful arrests. The only other exceptions to the warrant requirement that could possibly apply in the present case are either consent or the existence of probable cause in conjunction with exigent circumstances.

We agree with the circuit court's reasoning that the searches and seizures without a warrant cannot be justified on the basis of probable cause in conjunction with exigent circumstances. In order for exigent circumstances to exist, there must be probable cause to believe that an immediate search without a warrant is necessary to prevent loss or destruction of evidence. *Preston v United States,* 376 US 364, 367; 84 S Ct 881; 11 L Ed 2d 777 (1964); *People v Claybon,* 124 Mich App 385; 335 NW2d 493 (1983). Exigent circumstances do not exist merely because it would be expedient to proceed without a warrant. *People v Anthony,* 120 Mich App 207; 327 NW2d 441 (1982), cert den 462 US 1111; 103 S Ct 2463; 77 L Ed 2d 1340 (1983).

Subsection (9) of § 625c allows the state to obtain blood test results when the blood tests are performed for the purpose of medical treatment. If blood tests are performed for purposes of medical treatment, then there is no danger that there will be a loss of evidence. The hospital will perform the blood test when an injured driver is brought in for treatment and the results will be preserved. If probable cause sufficient to support the issuance of a search warrant is presented to a magistrate, the blood test results can be obtained by the prosecutor under a search warrant. There were no exigent circumstances in these cases that would justify a search and seizure without a warrant.

We also agree with the circuit court's reasoning that a search and seizure without a warrant cannot be justified on the basis of consent. Any consent would have to be implied as there was no actual consent. Under § 625c of the Michigan Vehicle Code, MCL 257.625c; MSA 9.2325(3), each person who drives on state highways is deemed to have given consent to a search and seizure without a warrant in the form of a chemical test of the person's blood, breath, or urine. However, under § 625d, MCL 257.625d; MSA 9.2325(4), a driver has an absolute right to refuse a police officer's request to submit to a chemical test, which results in automatic suspension of the driver's license.

The act of driving on state highways cannot, by itself, be unequivocal consent to take a chemical test in light of the driver's absolute right to refuse to submit to a test. Moreover, the constitutional right to refuse to consent to a search,[2] as well as the constitutional requirement that consent be

---

[2] *Schneckloth v Bustamonte*, 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973); *People v Stephens,* 133 Mich App 294, 298; 349 NW2d 162 (1984).

freely and voluntarily given,[3] precludes a finding that driving on state highways by itself constitutes unequivocal, nonrevokable consent.

We note that New York's implied consent law, which also requires that a driver be given an absolute right to refuse to take a test, has been interpreted differently. Under the New York statute, the act of driving on state highways is, by itself, consent to submit to a chemical test without the necessity of any additional express consent. The legislative history of the New York statute indicates that "[t]he only reason the opportunity to revoke is given is to eliminate the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test." *People v Kates,* 53 NY2d 591-596; 428 NE2d 852; 444 NYS2d 446 (1981).

There is no available legislative history of the Michigan statute that would support an interpretation similar to that given the New York statute. We can only read the plain language of the Michigan statute to mean that a driver's absolute right to refuse to submit to a chemical test is no more than a requirement that there be express consent. In the present case, none of the defendants was given an opportunity to refuse to submit to a chemical test despite the fact that they were conscious at the time their blood was drawn. Thus, the searches and seizures without a warrant cannot be justified on the basis of consent. This is especially true as a valid arrest is required to energize the Michigan implied consent law. *Gallagher v Secretary of State (On Rehearing),* 59 Mich App 269; 229 NW2d 410 (1975).

The people point to numerous cases in other

[3] *Bumper v North Carolina,* 391 US 543, 548; 88 S Ct 1788; 20 L Ed 2d 797 (1968); *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), cert den 422 US 1048; 95 S Ct 2665; 45 L Ed 2d 701 (1975).

jurisdictions where it was held that the police may obtain the blood test results from an injured driver without giving the driver the opportunity to refuse to consent. However, in those cases, the driver was unconscious.[4] Most states' implied consent laws specifically provide that an unconscious driver is deemed not to have withdrawn consent to a chemical test.[5] Moreover, those searches and seizures of unconscious persons could be justified on the basis of probable cause in conjunction with exigent circumstances since the blood tests were performed at the request of police rather than for purposes of medical treatment. Subsection (9) of § 625a is not limited to unconscious drivers, but includes all drivers who are taken to a hospital for treatment no matter how minor the injury might be. All of the defendants in the present case were conscious at the time of their blood tests.

Our research reveals that only two other states have provisions in their implied consent laws that allow blood tested for purposes of medical treatment to be turned over to the state without the driver's consent and without a search warrant.[6] Florida's implied consent law was challenged in *Filmon v State,* 336 So 2d 586 (Fla, 1976). However, as discussed above, the driver in *Filmon* was unconscious and the blood was drawn at the request of police. No challenge to Florida's law has

[4] *Filmon v State,* 336 So 2d 586 (Fla, 1976), app dis 430 US 980; 97 S Ct 1675; 52 L Ed 2d 375 (1977); *State v Trujillo,* 85 NM 208; 510 P2d 1079 (1973); *People v Kates,* 53 NY2d 591; 428 NE2d 852; 444 NYS2d 446 (1981).

[5] Ariz Rev Stat Ann § 28-691(C) (West Supp 1987); Iowa Code Ann § 321J.7 (West Supp 1988); Ohio Rev Code Ann § 4511.19.1(B) (Page Supp 1986); SC Code Ann § 56-5-2950(c) (Law Co-Op Supp 1987). See also Miss Code Ann § 63-11-7 (1972); Tenn Code Ann § 55-10-406(b) (Supp 1987); DC Code Ann § 40-505(b) (Supp 1987) (blood tests performed on unconscious driver not admissible without driver's consent).

[6] Fla Stat Ann §§ 316.1932(1)(c) and (1)(f)(2) (West Supp 1988); Ind Code Ann § 9-11-4-6 (Burns Supp 1987).

been made in a case with facts similar to those in the instant case.

Indiana's implied consent law was challenged in *Pollard v State,* 439 NE2d 177 (Ind App, 1982). In *Pollard,* the defendant's blood was drawn for medical treatment and it was turned over to the state without the defendant's consent. The defendant argued that there were no exigent circumstances and there was no consent. The Indiana Court of Appeals held that driving on state highways constituted consent. The court dismissed the exigent circumstances argument. In addition, the court held that the police had not searched the defendant.

We cannot agree with the reasoning of the Indiana Court of Appeals. As discussed above, exigent circumstances cannot exist when blood is drawn and tested for purposes of medical treatment. In addition, finding consent solely by the act of driving ignores the fact that a driver has an absolute right to refuse a chemical test. We believe that in the present case there were no circumstances justifying the lack of a warrant. Therefore, the searches and seizures of defendants' blood, in conformity with subsection (9) of § 625a, constituted unreasonable searches and seizures of defendants' blood in violation of the Fourth Amendment of the United States Constitution and art 1, § 11 of the Michigan Constitution.

III. DOES THE STATUTE VIOLATE THE EQUAL PROTECTION GUARANTEE?

Subsection (9) of § 625a also violates state and federal guarantees of equal protection. Const 1963, art 1, § 1; US Const, Am XIV, § 1. Strict scrutiny is applied to a classification that places a burden on a suspect class or on a fundamental constitu-

tional right. *Clements v Fashing*, 457 US 957; 102
S Ct 2836; 73 L Ed 2d 508, reh den 458 US 1133;
103 S Ct 20; 73 L Ed 2d 1404 (1982). Subsection (9)
of § 625a places a burden on fundamental Fourth
Amendment rights by allowing searches and sei-
zures without a warrant where there is no consent
and there are no exigent circumstances.

Even if fundamental rights were not involved,
we can find no rational basis for the classification
contained in subsection (9) of § 625a. The Michigan
Supreme Court has crystallized equal protection
analysis into the following two-part test that in-
cludes the United States Supreme Court's test:

> (1) Are the enactment's classifications based on
> natural distinguishing characteristics and do they
> bear a reasonable relationship to the object of the
> legislation?
> (2) Are all persons of the same class included
> and affected alike or are immunities or privileges
> extended to an arbitrary or unreasonable class
> while denied to others of like kind? [*Alexander v
> Detroit*, 392 Mich 30, 35-36; 219 NW2d 41 (1974).
> (Citations omitted.]

Subsection (9) of § 625a puts injured drivers who
are not arrested and are taken to the hospital in a
class separate from arrested drivers who are not
injured in accidents or who receive minor injuries
and are not taken to the hospital. If the drivers in
the present case had been unconscious, there
would be a reasonable basis for denying them the
opportunity to refuse a blood test while granting
the opportunity to all other drivers. However,
subsection (9) may be applied to drivers who are
conscious and capable of refusing to consent to a
blood test that will be used for purposes of prose-
cution. We find no reasonable or rational basis for
denying conscious drivers who are in the hospital

the same opportunity to refuse a blood test as is given to conscious drivers who are not in the hospital.

IV. SHOULD THE EVIDENCE BE ADMITTED EVEN THOUGH THE STATUTE IS UNCONSTITUTIONAL?

We will discuss the people's final two arguments together. First, the people argue that the blood test results were obtained by petitions and orders that constituted search warrants. We cannot agree with this contention. Each of the petitions states that the prosecutor had previously requested the results of the blood test and the hospitals indicated they would comply or had already complied. The purpose of the petitions was to compel the hospitals to release the names of the persons who withdrew the samples, the persons who analyzed the samples and the treating physicians. This information was not required to be released under subsection (9) of § 625a and a court order was necessary. Since it is clear that the petitions and orders were not used to obtain the blood test results, we reject the people's argument that the petitions and orders functioned as search warrants.

Second, the people argue that the blood test results need not be suppressed even if the statute is unconstitutional because the results could still be obtained through use of search warrants. The people's argument is based on the independent source doctrine that exempts evidence from the exclusionary rule where the government learned of the evidence from an independent source. *Segura v. United States,* 468 US 796, 799; 104 S Ct 3380; 82 L Ed 2d 599 (1984). The federal cases cited by the people stand for the proposition that the government may not use knowledge illegally

obtained as the basis for a search warrant. However, knowledge obtained independently of unlawful activity may be used to support a search warrant. It would be impossible, at this time, for the prosecution to obtain knowledge of the evidence independently as the prosecution already has the evidence in its possession.

We note the exclusionary rule does not apply to the present case under federal standards. The United States Supreme Court, following the "good faith" exception of *United States v Leon,* 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), has recently held that the exclusionary rule does not apply to evidence obtained through reasonable reliance on a statute authorizing administrative searches without warrants which is subsequently found to violate the Fourth Amendment. *Illinois v Krull,* 480 US —; 107 S Ct 1160; 94 L Ed 2d 364, 375 (1987). Based on the good faith exception applied in *Krull,* the federal exclusionary rule would not apply in the present case.

However, this Court has refused to adopt the good faith exception to the exclusionary rule. *People v Sundling,* 153 Mich App 277; 395 NW2d 308 (1986); *People v Sellars,* 153 Mich App 22; 394 NW2d 133 (1986). Likewise, the Michigan Supreme Court has not adopted the good faith exception to the exclusionary rule for state cases under the state constitution. Therefore, we believe that the exclusionary rule should be applied to suppress the direct products of the Fourth Amendment violations in the present cases.

The efforts to apprehend and convict impaired and intoxicated drivers should be encouraged. However, these efforts cannot be assisted by the use of a statute that violates the constitutional rights of the citizenry. This statute would allow a prosecutor to place a permanent order to all hospi-

tals in the county requesting them to turn over the blood test results of any driver of a motor vehicle who has had blood extracted after an accident without having any cause, probable or otherwise, to believe the driver was intoxicated. This cannot stand. MCL 257.625a(9); MSA 9.2325(1)(9) is unconstitutional. The blood alcohol test results must be excluded from evidence at the trials of the five defendants.

Affirmed.

McDonald, J., concurred in the result only.