PEOPLE v KROLL

Docket No. 111356. Submitted April 12, 1989, at Grand Rapids. Decided August 9, 1989.

Gary Lynn Kroll is charged in Muskegon Circuit Court with manslaughter in connection with the death of Lori Kay Blankenship in an automobile accident involving defendant. Immediately after the accident, defendant had received treatment at a hospital, which treatment included a blood test. Prior to charging defendant, the prosecution had obtained the results of the test, which included a test result indicating a blood-alcohol level of 0.31 percent, by making a request pursuant to MCL 257.625a(9); MSA 9.2325(1)(9). After defendant was charged, the Court of Appeals held MCL 257.625a(9); MSA 9.2325(1)(9) to be unconstitutional. *People v Perlos,* 170 Mich App 75 (1988). The prosecution in this case thereafter obtained a search warrant authorizing it to acquire the medical record containing defendant's blood-test results. The warrant was successfully executed. Defendant brought a motion to suppress evidence of the blood-test results, citing *Perlos.* The trial court, R. Max Daniels, J., denied the motion, deciding not to follow *Perlos* and ruling in part that the evidence was admissible under the inevitable discovery exception to the exclusionary rule. Defendant sought and was granted leave to file an interlocutory appeal.

The Court of Appeals *held:*

1. The trial court erred in choosing not to follow *Perlos* since the trial court, at the time of its ruling, was bound by the rule of stare decisis to abide by the decision in *Perlos.*

2. However, the error does not require reversal. The trial court correctly ruled that the inevitable discovery rule supports the admission of the disputed evidence.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — EXCLUSIONARY RULE — FRUIT OF THE POISONOUS TREE.

The fruit of the poisonous tree doctrine does not render inadmis-

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 330, 375-378; Evidence § 830.

Admissibility in criminal case of blood alcohol test where blood was taken from unconscious driver. 72 ALR3d 325.

sible all evidence simply because the evidence would not have come to light but for the illegal actions of the police; the question is whether the evidence has been procured by an exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

2. CRIMINAL LAW — EVIDENCE — EXCLUSIONARY RULE — INEVITABLE DISCOVERY DOCTRINE.

The inevitable discovery doctrine allows the admission of evidence obtained in violation of the constitutional prohibition against unlawful searches and seizures where such evidence would have ultimately or inevitably been discovered by lawful means; the prosecution must establish inevitable discovery by a preponderance of the evidence.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Harold F. Closz, III,* Prosecuting Attorney, and *Kevin A. Lynch,* Assistant Prosecuting Attorney, for the people.

*Vander Ploeg, Ruck, Luyendyk & Wells* (by *Douglas M. Hughes*), for defendant on appeal.

Before: SHEPHERD, P.J., and HOLBROOK, JR., and McDONALD, JJ.

PER CURIAM. In this interlocutory appeal, defendant appeals by leave granted from an August 15, 1988, pretrial order denying his motion to suppress certain blood-test evidence. We affirm.

On March 26, 1988, defendant was involved in an automobile accident when his vehicle collided with a second vehicle driven by Lori Kay Blankenship. Blankenship died as a result of injuries sustained in the accident. Defendant was transported while unconscious to a local medical facility, where blood was drawn and evaluated for purposes of medical treatment. The blood test revealed an alcohol level of 0.31 percent.

Pursuant to § (9) of the so-called implied consent

statute, MCL 257.625a(9); MSA 9.2325(1)(9),[1] the blood-alcohol test results were turned over to the prosecution. Defendant was charged with manslaughter, MCL 750.321; MSA 28.553, as a result of Blankenship's death.

On July 18, 1988, in *People v Perlos,* 170 Mich App 75; 428 NW2d 685 (1988), a panel of this Court held that MCL 257.625a(9); MSA 9.2325(1)(9) is unconstitutional because it permits searches and seizures without warrant of a conscious driver's blood in violation of US Const, Am IV and Const 1963, art 1, § 11, and violates a conscious driver's equal protection rights guaranteed by US Const, Am XIV, § 1 and Const 1963, art 1, § 2. The rationale behind the equal protection holding was that there is no rational basis for denying conscious drivers who are in the hospital the same opportunity to refuse a blood test as is granted to conscious drivers who are not in the hospital. *Id.,* pp 89-90.

The prosecution responded to the *Perlos* decision by obtaining a search warrant on August 5, 1988, to obtain the medical record containing defendant's blood-test results. The search warrant was executed the same day. Four days later on August 9, 1988, defendant filed a motion to suppress evi-

---

[1] MCL 257.625a(9); MSA 9.2325(1)(9) states:

   If after an accident the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for the purpose of medical treatment, the results of a chemical analysis of that sample shall be admissible in a criminal prosecution for a crime described in subsection (1) to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subsection. A medical facility or person disclosing information in compliance with this subsection shall not be civilly or criminally liable for making the disclosure.

dence of the blood-test results based on the *Perlos* decision.

At the August 15, 1988, hearing on the motion, the trial court refused to follow the holding in *Perlos* regarding the constitutionality of the statute. The trial court held that evidence of the blood-test results was admissible under the statute and, in any event, would be admissible under the alternative arguments made by the prosecutor as to inevitable discovery, independent source or good faith.

On appeal, defendant contends that the trial court erred in refusing to follow the *Perlos* holding regarding the constitutionality of MCL 257.625a(9); MSA 9.2325(1)(9). We agree. A published opinion of this Court has precedential effect under the rule of stare decisis. MCR 7.215(C)(2). As such, a trial judge is constrained to follow a decision by any panel of this Court unless it is contradicted by another panel or overruled by our Supreme Court. *In the Matter of Hague,* 412 Mich 532, 552; 315 NW2d 524 (1982), reh den 413 Mich 1106 (1982); *Moorhouse v Ambassador Ins Co, Inc,* 147 Mich App 412, 417; 383 NW2d 219 (1985), lv den 425 Mich 856 (1986).

Nevertheless, we conclude that the trial court's error does not require reversal because the trial court correctly ruled that the inevitable discovery doctrine also supports the admission of the evidence of the blood-test results.

In reaching this conclusion, we begin by noting that, unlike the trial court, we are not required to follow the opinion of another panel of this Court, although we normally do so unless cognizant reasons appear for not doing so. *Moorhouse, supra,* p 417. While the instant appeal was pending, the panel in *Perlos* granted rehearing and another panel of this Court, in a case involving a defen-

dant who was apparently semiconscious when his blood was drawn at a hospital for purposes of medical treatment, upheld the constitutionality of MCL 257.625a(9); MSA 9.2325(1)(9) contrary to the *Perlos* decision. See *People v England,* 176 Mich App 334; 438 NW2d 908 (1989).

The instant case is factually distinct from both *Perlos* and *England* since it involves a defendant who undisputedly was unconscious when his blood was drawn at the hospital for purposes of medical treatment. Further, the record shows that this same evidence was subsequently obtained pursuant to a valid search warrant.

At the center of the controversy here is whether evidence of the blood-test results must be suppressed under the exclusionary rule of *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), as the so-called fruit of the poisonous tree. Under this exclusionary rule, the appropriate inquiry, where a defendant claims that physical evidence should be suppressed as a result of an unlawful seizure, is whether that evidence was procured by an exploitation of the illegality or, instead, by means sufficiently distinguishable to be purged of the primary taint. *People v Jones,* 66 Mich App 223, 230-231; 238 NW2d 813 (1975), modified on other grounds 397 Mich 871 (1976). This is not a "but for" test, but rather depends on whether there has been an exploitation of the primary illegality. *Jones, supra.*

The primary illegality here stems from the fact that the blood-test results were initially obtained without a search warrant pursuant to a statute that was declared unconstitutional in *Perlos.* In the event that the *Perlos* rationale is followed, the prosecution argues that there was no exploitation of the primary illegality because it later obtained the same evidence under a valid search warrant

and, hence, was admissible pursuant to the inevitable discovery exception to the exclusionary rule. By contrast, defendant contends that the only question is whether the evidence was obtained by means of an independent source and that, pursuant to *Perlos,* a consideration of the independent source doctrine does not justify admitting the evidence because the prosecutor already had knowledge and possession of the evidence before the search warrant was obtained.

The panel in *Perlos* recently reversed its position on the independent source doctrine and remanded to the lower court to determine whether the evidence, which was obtained without a warrant, may be purged of any taint by the prosecutor's establishment of independent acquisition of the evidence. See *People v Perlos (On Rehearing),* 177 Mich App 657; 442 NW2d 734 (1989). In any event, the independent source and inevitable discovery doctrines provide separate and distinct exceptions to the exclusionary rule. In *Nix v Williams,* 467 US 431, 443-444; 104 S Ct 2501; 81 L Ed 2d 377 (1984), the United States Supreme Court, in comparing the inevitable discovery and independent source doctrines, stated:

> [T]he derivative evidence analysis ensures that the prosecution is not put in a *worse* position simply because of some earlier police error or misconduct. The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation. . . . The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position than they would have been in if no police error or misconduct had occurred. . . . When the chal-

lenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation. There is a functional similarity between these two doctrines in that exclusion of evidence that would inevitably have been discovered would also put the government in a worse position, because the police would have obtained that evidence if no misconduct had taken place. Thus, while the independent source exception would not justify admission of evidence in this case, its rationale is wholly consistent with and justifies our adoption of the ultimate or inevitable discovery exception to the exclusionary rule. [Emphasis in original.]

The purpose of the inevitable discovery doctrine is to block setting aside convictions that would have been obtained without police misconduct. 467 US 443, n 4. The inevitable discovery doctrine is recognized in Michigan and may justify the admission of otherwise tainted evidence which ultimately would have been obtained in a constitutionally accepted manner. *People v Spencer,* 154 Mich App 6; 397 NW2d 525 (1986); *People v Harajli,* 148 Mich App 189; 384 NW2d 126 (1986), lv den 426 Mich 867 (1986). The test is whether the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would be discovered by lawful means. *Spencer, supra,* p 18. The trial court's ruling will be upheld unless clearly erroneous. *Harajli, supra,* p 194.

Here, the prosecutor ultimately discovered the evidence by lawful means, namely, a valid search warrant. The warrant was based on the affidavit of a sheriff's deputy who investigated the automobile accident. The affiant averred facts which came to light at the scene of the accident and during the investigation of the cause of the accident. It recites

statements from people with firsthand knowledge of defendant's insobriety prior to and immediately preceding the time of the accident. None of the facts upon which the warrant was subsequently granted were in any way tainted by the poison of the initial acquisition of the blood-test results.[2]

On the basis of this record, we find no error in the trial court's decision to admit the evidence of the blood-test results obtained upon execution of the search warrant under the inevitable discovery exception to the exclusionary rule. The evidence obtained under the warrant was not tainted by any prior police error or misconduct and, hence, is not subject to the exclusionary rule. To hold otherwise would put the prosecution not in the same, but in a worse, position than it would have been had there been no prior error or misconduct. Such a result would be particularly egregious where, as here, the "error" or "misconduct" was merely that of relying upon a statute which only later was

---

[2] The affidavit, in part, provided:

Affiant states that on said date, he was dispatched to the scene of the accident. At the scene, he observed Gary Kroll in the driver's seat of his vehicle and observed the odor of alcohol on Gary Kroll's breath. He also observed several empty beer bottles or cans on the floor of the Kroll vehicle.

Affiant states further that Dep. Darryl Bonebrake, MCSD, was also at the accident scene. Dep. Bonebrake advised Affiant that he had spoken with Mike Kroll, brother of Gary Kroll at the accident scene. Mike Kroll told Dep. Bonebrake that he and Gary had been at the Half Moon Saloon just prior to the accident. Gary left the bar alone. Mike Kroll told Dep. Bonebrake that "I shouldn't have let him drive; he was too drunk to drive." Dep. Bonebrake advised Affiant of the statement made by Mike Kroll.

Affiant also states that he spoke with Christy Porter, a security officer at Hackley Hospital, who was working on the date in question. Mrs. Porter informed Affiant that she had contact with Mike Kroll while he was at the hospital after Gary Kroll was admitted for treatment on March 26, 1988. Mrs. Porter described the contact to Affiant: Mike Kroll appeared intoxicated and was upset. He stated: I should have driven when Gary asked me to. He was in worse shape than me.

declared unconstitutional in *Perlos.* In sum, we conclude that defendant is not entitled to any relief on this issue for the reason that no constitutional infirmity results from the admission of evidence of the blood-test results at trial.

The prosecution has raised a second issue in this interlocutory appeal that we shall briefly dispose of. The prosecution has requested that we decide whether the physician-patient privilege of MCL 600.2157; MSA 27A.2157 operates to preclude the prosecution from introducing defendant's blood-test results at trial. We decline to address this issue for the reason that it has not yet been addressed by the trial court and was not raised by defendant in his application for interlocutory appeal. In granting defendant's application, this Court specifically limited the appeal to the issues raised in the application and supporting brief.

In passing, we note that the panel in *Perlos* did not address the physician-patient privilege issue in ruling that MCL 257.625a(9); MSA 9.2325(1)(9) was unconstitutional, while the panel in *England* did address this issue. The *England* Court concluded that the physician-patient privilege is not available when evidence is obtained under the implied consent statute. Should defendant raise the physician-patient issue on remand, our holding in this interlocutory appeal should not be construed as precluding the trial court from now relying on *England* to resolve the privilege issue.

In conclusion, we hold only that evidence of the blood-test results was admissible under the inevitable discovery exception to the exclusionary rule, notwithstanding the current conflict between the decisions in *Perlos* and *England* on the constitutionality of MCL 257.625a(9); MSA 9.2325(1)(9).

Affirmed.