PEOPLE v CRAMPTON

Docket No. 112880. Submitted July 20, 1989, at Grand Rapids. Decided September 18, 1989.

Bernadene Clarice Crampton was involved in an automobile accident and was taken by ambulance to a hospital. While at the hospital, she was x-rayed and underwent a blood-alcohol test. The blood-alcohol test results showed that Crampton had a blood-alcohol level of 0.185 percent. The test results were turned over to the police. Because the passenger in the car she had been driving died, Crampton was charged in Muskegon Circuit Court with negligent homicide. Crampton moved to suppress evidence of the blood-alcohol test results, arguing that, at the time the blood-alcohol test was administered, the police did not have a search warrant authorizing administration of the test or seizure of the results and that the statute which provides that results of chemical tests initially obtained for purposes of medical treatment may be admitted in criminal prosecution is unconstitutional. The court, R. Max Daniels, J., denied the motion to suppress. Defendant appealed by leave granted.

The Court of Appeals *held:*

1. The statute at issue is not unconstitutional.

2. Even if the statute at issue were unconstitutional, the blood test evidence in this case would have been admissible because the results inevitably would have been discovered by lawful means. The prosecutor ultimately discovered the evidence by means of a valid search warrant based on the investigating police officer's affidavit, which contained facts not tainted by the fact that the initial seizure of the blood test results was accomplished without a search warrant.

Affirmed.

1. SEARCHES AND SEIZURES — BLOOD TESTS — IMPLIED CONSENT STATUTE — MEDICAL TREATMENT — EQUAL PROTECTION.

The provision in the implied consent statute providing that a

REFERENCES
Am Jur 2d, Searches and Seizures §§ 29, 54, 105.
See the Index to Annotations under Blood Tests.

prosecutor may secure and use in evidence in a criminal prosecution to show the blood-alcohol level of an accused the results of the chemical analysis of a blood sample taken by a medical facility for the purpose of medical treatment is not violative of either the federal or Michigan constitutional right against unreasonable searches and seizures; nor does that provision violate the constitutional right to equal protection of the law (US Const, Am IV, Am XIV; Const 1963, art 1, §§ 1, 11; MCL 257.625a[9]; MSA 9.2325[1][9]).

2. CRIMINAL LAW — EVIDENCE — EXCLUSIONARY RULE — INEVITABLE DISCOVERY DOCTRINE.

The inevitable discovery doctrine allows the admission of evidence obtained in violation of the constitutional prohibition against unlawful searches and seizures where such evidence would have ultimately or inevitably been discovered by lawful means.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Tony Tague,* Prosecuting Attorney, and *Kevin A. Lynch,* Assistant Prosecuting Attorney, for the people.

*Alan S. Rapoport,* for defendant on appeal.

Before: DANHOF, C.J., and CYNAR and WEAVER, JJ.

WEAVER, J. Defendant filed this interlocutory appeal from the circuit court's order denying her motion to suppress evidence of a blood-alcohol test taken at the hospital after an automobile accident. We affirm.

I

On the evening of April 29, 1988, defendant and her fiance, David Walter James (now deceased), went out to celebrate the finality of James' divorce, which had occurred earlier that day. Defendant asserts that, while she was driving to James' home, their car was confronted by blinding head-

lights approaching in their lane, causing her to drive off the right side of the road and hit a tree. Although still conscious, James was badly hurt. After comforting him, defendant, with blood streaming down her face, kicked open the door, flagged down a passing vehicle, and asked for an ambulance. She returned to her car and held James in her arms until the authorities and an ambulance arrived. Both defendant and James were taken to the hospital, where defendant was x-rayed and questioned by a police officer. Upon learning that James had died, defendant became hysterical.

While at the hospital defendant underwent a blood-alcohol test, which showed that defendant had a blood-alcohol level of 0.185 percent. The test results were turned over to the police officer at the scene who had previously consulted an assistant prosecutor and had been advised that no warrant was necessary under the so-called implied consent statute, MCL 257.625a(9); MSA 9.2325(1)(9).[1]

Defendant was charged with negligent homicide in late July of 1988. Although defendant appeared with counsel for the preliminary examination scheduled on August 9, 1988, and informed the prosecutor of her intention to object to use of

[1] MCL 257.625a(9); MSA 9.2325(1)(9) provides:

If after an accident the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for the purpose of medical treatment, the results of a chemical analysis of that sample shall be admissible in a criminal prosecution for a crime described in subsection (1) to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subsection. A medical facility or person disclosing information in compliance with this subsection shall not be civilly or criminally liable for making the disclosure.

evidence of the blood-alcohol test results, the examination was adjourned due to the prosecutor's lack of success in serving process on the doctor who had performed the blood tests.

At the preliminary examination held on August 23, 1988, the prosecutor presented a search warrant which had been executed on August 15, 1988, and introduced evidence of the blood-alcohol test results over objection by defense counsel. Defendant was bound over to circuit court. On October 27, 1988, the circuit court denied defendant's motion to suppress evidence of the blood-alcohol test results despite the decision of July 18, 1988, by a panel of this Court in *People v Perlos,* 170 Mich App 75; 428 NW2d 685 (1988), which had found MCL 257.625a(9); MSA 9.2325(1)(9) unconstitutional.[2] Defendant filed this interlocutory appeal.

II

We are unpersuaded by defendant's argument that the decision in *Perlos* mandates a finding that the trial court committed an error requiring reversal in ruling that the blood test evidence was admissible in the prosecutor's case in chief.

We fundamentally disagree with the *Perlos* decision, which held MCL 257.625a(9); MSA 9.2325(1)(9) unconstitutional as violative of the federal and state constitutions, US Const, Am IV; Const 1963, art 1, § 11, and violative of state and federal guarantees of equal protection, US Const, Am XIV, § 1; Const 1963, art 1, § 1. Instead, we

[2] On rehearing, the panel in *Perlos* recently remanded the case to the circuit court with instructions that the circuit court remand to the district court to determine whether the evidence seized without a warrant could be purged of any taint by the prosecutor's establishment of independent acquisition of the evidence in accord with *Murray v United States,* 487 US —; 108 S Ct 2529; 101 L Ed 2d 472 (1988). See *People v Perlos (On Reh),* 177 Mich App 657; 442 NW2d 734 (1989).

find persuasive and adopt the reasoning of *People v England,* 176 Mich App 334; 438 NW2d 908 (1989), which upheld the subsection's constitutionality. *England, supra* at 337, 343-348.

The panel in *England* found that the actual removal of the blood sample for medical purposes following an accident was not a search protected by the Fourth Amendment because state action was not involved; the sample was removed, not at the direction of the police, the prosecutor, or other state agents, but strictly for purposes of medical treatment. *England, supra* at 343-344. The panel in *England* further found that the state's involvement in later obtaining the test results did not amount to an unconstitutional seizure; although a defendant has a subjective expectation of privacy in his medical records, such expectation under these circumstances is not objectively reasonable in light of society's recognized interests. These interests have been expressed in the Legislature's enactment of MCL 257.625c; MSA 9.2325(3) (implied consent of drivers to a chemical test of blood, breath or urine to determine presence of alcohol or drugs); MCL 257.625a(9); MSA 9.2325(1)(9) (admissibility of chemical test results, initially obtained for purposes of medical treatment, in criminal prosecutions); and MCL 257.625a(6); MSA 9.2325(1)(6) (notwithstanding an arrestee's right to refuse the chemical test absent court order, suspension of driver's license and addition of six points to the arrestee's driving record upon refusal to consent). *Id.* at 344-346.

The panel in *England* also found that MCL 257.625a(9); MSA 9.2325(1)(9) did not violate federal and state guarantees of equal protection because: (1) the defendant's right to assert the evidentiary doctor-patient privilege was not a fundamental interest requiring strict scrutiny analysis,

and (2) the Legislature had a rational basis for enacting subsection (9), i.e., public safety and greater ease in prosecuting drunk drivers without costly and cumbersome procedures. *Id.* at 347-348.

Although we agree with the reasoning of *England* in upholding the subsection's constitutionality, we note that the blood test evidence in this case would in any event have been admissible because, even were the subsection found to be unconstitutional, the results would inevitably have been discovered by lawful means. See *Nix v Williams,* 467 US 431, 444; 104 S Ct 2501; 81 L Ed 2d 377 (1984); *People v Spencer,* 154 Mich App 6, 18; 397 NW2d 525 (1986). The admissibility of blood test evidence under the inevitable discovery rule has been addressed in yet another recent decision by a panel of this Court, *People v Kroll,* 179 Mich App 423; 446 NW2d 317 (1989).[3]

In *Kroll,* as in this case, the blood test evidence was first seized without a warrant. However, again as in this case, the prosecutor responded to the decision in *People v Perlos, supra,* by obtaining a valid search warrant shortly after *Perlos* was decided. Although noting that the trial court was constrained to follow a decision by any panel of this Court unless contradicted by another panel or overruled by our Supreme Court, the *Kroll* panel nonetheless concluded that the trial court's error did not require reversal because the inevitable discovery exception to the exclusionary rule also supported admissibility of the blood test evidence. *Kroll, supra* at 426.

---

[3] The panel in *Kroll* did not take a position on the issue of the subsection's constitutionality because the facts of *Kroll* were distinguishable from those of both *England* and *Perlos* on the bases that (1) the defendant in *Kroll* was unconscious when his blood was drawn at the hospital for purposes of medical treatment and (2) the prosecutor in *Kroll* later obtained a search warrant, a step not taken in *England* or *Perlos.*

Here, as in *Kroll,* the prosecutor ultimately discovered the evidence by means of a valid search warrant based on the investigating police officer's affidavit, which contained facts not tainted by the initial seizure of the blood test results made without a search warrant. Accordingly, the inevitable discovery rule supports the trial court's decision to admit the evidence of defendant's blood-alcohol test initially taken for medical purposes following the accident.

Affirmed.