PEOPLE v BOUCHER

Docket No. 68227. Submitted October 13, 1983, at Lansing.—Decided
    December 19, 1983. Leave to appeal applied for.

Daniel Boucher was convicted of first-degree murder, Oakland
    Circuit Court, Steven N. Andrews, J. The defendant had previ-
    ously been convicted of the same offense but that conviction
    was reversed by the Court of Appeals after the prosecution filed
    a motion for peremptory reversal in which it admitted that
    error requiring reversal had occurred. Subsequently, the defen-
    dant was found to be incompetent to stand trial. Thereafter,
    the murder charge against the defendant was dismissed after
    he was found still to be incompetent to stand trial. The charge
    against the defendant was reinstated 29 months later and he
    was convicted. The defendant appealed, alleging that: (1) he
    was denied his constitutional right to a speedy trial; (2) the
    trial court instructed the jury on an improper standard regard-
    ing his insanity defense; (3) the testimony of the psychitrist
    who examined the defendant shortly after he was arrested
    violated the physician-patient privilege; (4) the examination by
    the psychiatrist shortly after the defendant's arrest violated
    Boucher's right to remain silent and his right to have assis-
    tance of counsel; and (5) insufficient evidence was produced to
    show that the defendant was sane at the time of the offense.
    *Held:*

1. The 29-month period between the dismissal of the murder
    charge and the reinstatement of the charge did not result in a
    violation of the defendant's right to a speedy trial. The Sixth
    Amendment right to a speedy trial did not arise until the
    charges were pending after having been reinstated.

2. The trial court did not err in instructing the jury regard-

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 113.
    21A Am Jur 2d, Criminal Law § 659.
[2] 21 Am Jur 2d, Criminal Law § 56 *et seq.*
    73 Am Jur 2d, Statutes § 350.
[3] 21 Am Jur 2d, Criminal Law § 79.
    Privilege, in judicial or quasi-judicial proceedings, arising from
        relationship between psychiatrist or psychologist and patient. 44
        ALR3d 24.

ing the defendant's defense of insanity. The court properly instructed the jury on the law at the time that the offense was committed.

3. The testimony of the psychiatrist who examined the defendant after his arrest did not violate the physician-patient privilege. No physician-patient privilege arose here because the information given by the defendant was not for purposes of treatment by the psychiatrist. The doctor informed the defendant that the prosecutor had asked the doctor to talk to the defendant and that the information would be released to the prosecutor for use in court.

4. The examination of the defendant by the psychiatrist did not deprive the defendant of his right to remain silent or to have assistance of counsel. The defendant, who had been given his *Miranda* warnings, waived those rights.

5. Sufficient evidence was produced to show that the defendant was sane at the time of the offense according to the applicable law at the time that the offense was committed.

Affirmed.

1. CRIMINAL LAW — SPEEDY TRIAL — INCOMPETENCY TO STAND TRIAL.

A defendant's right to a speedy trial was not violated where the charges pending against him were dismissed after he had been found incompetent to stand trial and 29 months later the charges were reinstated after the defendant was found to be competent to stand trial; the right to a speedy trial arises when charges are pending.

2. CRIMINAL LAW — INSANITY DEFENSE:

The statute regarding the legal definition of insanity applies to offenses committed on or after August 6, 1975; the law regarding the defense of insanity in effect at the time that an offense was committed should be applied to offenses committed before August 6, 1975 (MCL 768.21a; MSA 28.1044[1]).

3. CRIMINAL LAW — PHYSICIAN-PATIENT PRIVILEGE.

The physician-patient privilege would not apply to information obtained from a defendant by a psychiatrist after the defendant was in police custody where the psychiatrist informed the defendant of his *Miranda* rights, that he had been asked by the prosecutor to talk with the defendant, and that the information would be released to the prosecutor for use in court (MCL 600.2157; MSA 27A.2157).

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *Robert C. Williams,* Chief Appellate Counsel, and *Robert F. Davisson,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: DANHOF, C.J., and ALLEN and W. R. PE-TERSON,* JJ.

DANHOF, C.J. Defendant was convicted after a jury trial of first-degree murder for the shooting of his ex-wife on October 16, 1968, MCL 750.316; MSA 28.548. He was sentenced to life imprisonment and presently appeals as of right. Defendant was previously convicted of the same offense, but the conviction was reversed by this Court on January 29, 1973, after the prosecution filed a motion for peremptory reversal in which it confessed reversible error.

On appeal, defendant argues initially that he was denied his constitutional right to a speedy trial. The shooting of defendant's ex-wife occurred on October 16, 1968. Defendant was first convicted of the offense on April 23, 1971. This conviction was reversed by this Court on January 29, 1973. On June 27, 1973, defendant was found incompetent to stand trial and was committed to Northville Hospital. On July 23, 1976, defendant was found to still be incompetent and the charge against him was dismissed pursuant to MCL 330.2044(1)(b); MSA 14.800(1044)(1)(b). On December 28, 1978, the prosecution petitioned to reinstate the case. This petition was granted on November 30, 1979.

Defendant herein argues that the 29-month period between July, 1976, and December, 1978,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

resulted in a violation of his right to a speedy trial. The United States Supreme Court recently considered this issue in *United States v Mac-Donald,* 456 US 1; 102 S Ct 1497; 71 L Ed 2d 696 (1982), and determined that no Sixth Amendment right to a speedy trial arose until charges were pending. In *MacDonald,* civilian criminal charges were reinstated against defendant after military authorities had dismissed the charges. The Supreme Court there held that "the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges". 456 US 7. The charges here were dismissed pursuant to statute and were reinstated after defendant became competent to stand trial. The 29-month period between dismissal and reinstatement did not result in a violation of defendant's right to a speedy trial.

Defendant next argues that the trial court instructed the jury on an improper standard concerning defendant's insanity defense. The trial court instructed the jury on the issue of insanity by following verbatim the insanity instructions used in *People v Durfee,* 62 Mich 487; 29 NW 109 (1886), and expressly approved in *People v Martin,* 386 Mich 407, 419, fn 5; 192 NW2d 215 (1971), *cert den sub nom Lewis v Michigan,* 408 US 929 (1972). Defendant argues that these instructions were improper under 1975 PA 180, MCL 768.21; MSA 28.1044(1). Sections 2 and 3 of 1975 PA 180 provide, however:

"Section 2. This amendatory act shall apply to offenses committed on or after the effective date of this act. The law in effect at the time the offense was committed shall apply to offenses committed before the effective date of this act.

"Section 3. This amendatory act shall take effect August 6, 1975."

The express terms of the statute indicate that the amended definition of legal insanity was inapplicable to this case, as the offense occurred in 1968, prior to the effective date of the act.

The third issue raised by defendant on appeal is that the testimony of Dr. Warren Gordon, a psychiatrist who examined defendant shortly after defendant was arrested, violated the physician-patient privilege. MCL 600.2157; MSA 27A.2157 provides in pertinent part:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

Since the physician-patient privilege was not recognized at common law, the scope of the privilege is governed by this statute. *People v Lawrence Johnson,* 111 Mich App 383, 388; 314 NW2d 631 (1981), *lv den* 414 Mich 949 (1982). Dr. Gordon was called by an assistant prosecutor shortly after defendant was taken into custody and asked to examine defendant. Dr. Gordon testified that he read defendant his *Miranda*[1] rights, informed defendant that he had been asked to talk with him by the prosecutor and stated to defendant that the information would be released to the prosecutor for use in court. No physician-patient privilege arose between defendant and Dr. Gordon, since the information given by defendant was not for purposes of treatment by Dr. Gordon.

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

Defendant also argues that his examination by Dr. Gordon deprived him of his Fifth Amendment right to remain silent and his Sixth Amendment right to assistance of counsel. This argument is without merit. Although defendant's right to counsel had attached at the time he spoke with Dr. Gordon, *Estelle v Smith,* 451 US 454; 101 S Ct 1866; 68 L Ed 2d 359 (1981), defendant waived his right to counsel and his right to remain silent. The instant case is distinguishable from *Estelle, supra,* upon which defendant relies. In *Estelle,* the defendant was not advised of his *Miranda* rights. The psychiatrist who talked to defendant in *Estelle* did not obtain permission from defendant's attorney and did not inform the defendant that any statements made by him could be used against him at the sentencing portion of his trial to determine whether the death penalty was appropriate. In this case, defendant was repeatedly advised of his *Miranda* rights. Defendant waived his right to remain silent and his right to counsel. Defendant was told that Dr. Gordon was interviewing him at the prosecution's request and that statements made by defendant could be used against him at the trial.

Defendant also argues that insufficient evidence was produced to show that defendant was sane at the time of the offense. This issue has been resolved by our decision regarding the proper insanity test. Defendant does not dispute that the evidence of sanity was sufficient under the *Durfee* test. Since we have found that the *Durfee* instructions were proper, we find no error on this issue.

We find defendant's remaining allegation to be without merit. The jury instructions given by the trial court were proper.

Affirmed.