*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

MYRAN DESHAWN COUCH,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2020

No. 344235
Wayne Circuit Court
LC No. 17-000439-01-FH

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for reckless driving causing serious impairment of a body function, MCL 257.626(3), and failure to stop at the scene of an accident resulting in serious impairment of a body function, MCL 257.617. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 3½ to 7½ years in prison for both convictions. We affirm.

## I. FACTS

On October 18, 2015, after 2:00 a.m., Raquel Johnson was driving on westbound I-94 near Livernois in the far-left lane. She saw headlights approaching "pretty fast" in her rearview mirror. Although Johnson was traveling at a rate of 60 to 65 miles per hour (mph), she observed a yellow Charger and a burgundy Charger traveling at a high rate of speed. There was a vehicle traveling in front of Johnson's car and a semi-truck in the lane to her right. The Chargers "zipped past" and weaved in front of Johnson's car to pass the semi-truck and around the vehicle in front of her.

Further ahead on I-94, Donald Schuette was driving in the far-right lane at approximately 60 mph in his Chevrolet Trailblazer, and Victoria Harden was asleep in the passenger seat. Because Schuette was a motorcycle rider and former truck driver, he paid attention to his surroundings and checked his mirrors. Suddenly, the Trailblazer was rear-ended, and the vehicle rolled end over end several times. Although Johnson did not see the crash because of the semi-truck, she heard an explosive sound and saw a cloud of dust. The Trailblazer stopped rolling in the upright position. Although both occupants were wearing their seatbelts, Harden was coming

in and out of consciousness. Defendant, who had just left a bar, was driving the yellow Charger with his nephew as a passenger; defendant's friend was driving the burgundy Charger. Johnson observed the nephew holding his head, and defendant helping his nephew toward the burgundy Charger. Schuette exited his vehicle and walked toward the yellow Charger, but saw no one inside although five men were getting into the burgundy Charger. He pleaded for assistance and asked that an ambulance be called, but observed defendant smile as he left the scene of the accident in the burgundy Charger. Johnson pulled over and called 911.

Michigan State Police Trooper Dustin Kieffer was dispatched to the scene of the accident where he spoke with Schuette and observed Harden's condition. He also saw a half-full pint bottle of alcohol in the yellow Charger. Trooper Kieffer made a judgment call not to have an accident reconstructionist come to the scene. Instead, the vehicles were taken to a tow yard. Trooper Kieffer did a LEIN check of the license plate of the yellow Charger and learned that it was registered to defendant's girlfriend. On October 21, 2015, Trooper Kieffer went to the home of defendant's girlfriend and found defendant there. Although defendant represented that he had tried to make contact about the accident, no one advised Trooper Kieffer of any attempted communication, and there was no evidence that defendant reported the accident. Additionally, Trooper Kieffer contacted the local hospital to determine if anyone else injured in the accident received treatment, but did not learn of anyone. Yet, defendant represented that his nephew was taken to a local clinic and then to the hospital. Defendant attributed the accident to a vehicle significantly striking his Charger from behind that caused his vehicle to spin out of control and strike another vehicle. However, defendant's Charger did not sustain rear-end damage consistent with defendant's version of events.

Michigan State Police Sergeant Chad Lindstrom, specialist sergeant with the traffic crash reconstruction unit, gathered information about the car accident by using a crash data retrieval (CDR) tool to obtain data from the event data recorders (EDRs) or "black boxes" of the two vehicles. Sergeant Lindstrom determined that defendant's speed range before the accident was 111 to 129 mph. The jury convicted defendant of the charged offenses.

## II. MOTION FOR A DIRECTED VERDICT—EXPERT TESTIMONY

Defendant argues that he was convicted on the basis of "inefficient" evidence and the testimony of an "inefficient" expert witness "whose testimony did not meet the requisite standard of care." Defendant also argues that Sergeant Lindstrom's testimony failed to meet any scientific standard, and "the investigation never obtained crucial physical evidence needed to form an independent opinion by the expert." We disagree.

When reviewing the trial court's ruling on a motion for directed verdict,[1] this Court examines the evidence in a light most favorable to the prosecution to determine whether a

---

[1] Defendant repeatedly asserts that he objected to the expert testimony. The record reflects that after the prosecutor tendered Sergeant Lindstrom as an expert, defense counsel stated, "Your Honor, I have no questions for voir dire. I also recognize Sergeant Lindstrom as an expert." Waiver occurs when a defendant intentionally relinquishes or abandons a known right. *People v*

rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016). A trial court's decision to admit expert testimony and its determination regarding expert qualifications are reviewed for an abuse of discretion. *People v Dixon-Bey*, 321 Mich App 490, 496; 909 NW2d 458 (2017). An abuse of discretion occurs when the trial court selects an outcome outside the range of reasonable and principled outcomes. *Id*.

MRE 702 governs expert witness testimony and provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"An expert witness may offer an opinion only if he or she has specialized knowledge that will assist the trier of fact to understand the evidence." *People v Carll*, 322 Mich App 690, 699; 915 NW2d 387 (2018). The most relevant consideration in qualifying an expert is the nature and extent of knowledge and actual experience. *Id*. "An opposing party's disagreement with an expert's interpretation of the facts, or the expert's ultimate opinion, is an issue of credibility or weight of the testimony, not admissibility." *People v England*, 176 Mich App 334, 340; 438 NW2d 908 (1989). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Sergeant Lindstrom testified that he worked for the Michigan State Police Department since 2004, and with the traffic crash reconstruction unit since 2012. He was a board member for the Michigan Association of Traffic Accident Investigation and taught two classes regarding accident investigation. He had nearly 700 hours of specialized training relating to traffic crashes and CDR technology, had investigated hundreds of accidents, and had testified as an expert on 12 other occasions. On the basis of Sergeant Lindstrom's knowledge and experience, the trial court did not abuse its discretion by allowing him to testify as an expert. *Dixon-Bey*, 321 Mich App at 496.

Regarding the EDR data, defendant contends that, at trial, his counsel asked Sergeant Lindstrom, "Sir, you can't tell this Jury to any degree of scientific certainty, that the black box

---

*Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999). A waiver extinguishes any error because it leaves nothing for the appellate court to review. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). Nonetheless, defendant's challenge to the substance of the testimony in light of the elements of reckless driving causing serious impairment does not entitle him to appellate relief.

calculation that you gave is correct," to which Lindstrom responded, "No." However, defendant provides no transcript cite for that testimony, and there is no indication in the transcript that this testimony took place. Rather, defense counsel asked Sergeant Lindstrom at trial, "Sir, you can't tell this jury or this Court that to any degree of scientific certainty that that car was travelling a hundred miles an hour, can you, just based on that black box?" Sergeant Lindstrom responded, "There's nothing in the CDR report to suggest otherwise . . . ." Sergeant Lindstrom further stated, "As far as the validity of the data, there is nothing otherwise to suggest that it's not accurate." Therefore, defendant's argument relating to the inaccuracy of the data is unfounded.

Defendant essentially contends that Sergeant Lindstrom's testimony should have been excluded because of the deficient investigation of the accident. He cites to the fact that the police did not personally examine the scene, collect evidence, or photograph the vehicles and debris. Further, he notes that Sergeant Lindstrom's written report contains the caveat that the CDR should be reviewed by an expert analyst in conjunction with the physical evidence. However, defense counsel raised these issues with the sergeant on cross-examination and questioned the quality of the police investigation before the jury. Defendant's challenge to the sergeant's opinion addressed the weight of the testimony, not its admissibility, *England*, 176 Mich App at 340, and did not require exclusion of the evidence. Additionally, on redirect examination, Sergeant Lindstrom explained that he conducted an expert analysis for this case and the paragraph of his report cited by the defense was standard language directed to data extractions conducted for other police departments.

More importantly, the offense of reckless driving causing serious impairment of a body function occurs when a person operates a vehicle "in willful or wanton disregard for the safety of persons or property" and "causes serious impairment of a body function." MCL 257.626(2), (3); *People v Russell*, 297 Mich App 707, 723; 825 NW2d 623 (2012). Contrary to the argument raised by defendant, the prosecutor was not required to pinpoint defendant's rate of speed or even show that defendant exceeded the speed limit. Rather, the prosecutor was required to establish that defendant operated his vehicle in willful or wanton disregard for the safety of persons or property. Irrespective of the police testimony, Johnson testified that she observed headlights in her rearview mirror approaching at a high rate of speed, and the Chargers wove in and out of traffic at a high rate of speed despite the presence of other vehicles on the highway. Further, Schuette testified that his Trailblazer was rear ended with such force that it rolled over repeatedly from end to end until stopping, causing serious injury to Harden. Accordingly, the trial court appropriately denied defendant's motion for directed verdict.[2]

### III. RIGHT TO A SPEEDY TRIAL

---

[2] Although not raised in the statement of questions presented, in the discussion of this issue, defendant made an isolated reference to "the presentation of hearsay by the State amounts to prosecutorial misconduct[.]" However, defendant failed to expressly delineate any hearsay statement or correlate it to an impropriety by the prosecutor. Accordingly, we conclude that this issue was abandoned. *People v Solloway*, 316 Mich App 174, 197 n 10; 891 NW2d 255 (2016).

Defendant submits that his right to a speedy trial was violated. We conclude that defendant abandoned this issue.

Whether defendant was denied his right to a speedy trial is an issue of constitutional law, which the appellate court reviews de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The trial court's factual findings are reviewed for clear error. *Id.*

Both the United States Constitution and Michigan Constitution guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; see also *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009). Generally, the remedy for a violation of a defendant's right to a speedy trial is dismissal of the charge with prejudice. *Id.* at 664-665. To determine whether defendant's right to a speedy trial was violated, this Court balances four factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id.* at 665. Additionally:

> If the total delay, which runs from the date of the defendant's arrest until the time that trial commences, is under 18 months, then the burden is on the defendant to show that he or she suffered prejudice. However, if the delay is over 18 months, prejudice is presumed and the burden is on the prosecution to rebut the presumption. [*Id.* (citations omitted).]

On appeal, the only argument defendant makes regarding this issue is that he "was denied his right to a speedy trial in violation of his Sixth and Fourteenth Amendment rights under the Constitution of both the United States and Michigan Constitutions." Defendant contends that he objected to the prosecution's request for an adjournment on speedy trial grounds.

Defendant cites various caselaw in his brief, including the four-factor standard for a violation of the right to a speedy trial claim, but he does not analyze the issue or refer to the dates of hearings as set forth in the register of actions. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments . . . ." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation omitted). Given defendant's inadequate briefing, this argument is abandoned.[3]

## IV. SUFFICIENCY OF THE EVIDENCE

---

[3] We note that defendant repeatedly asserts the case was pending for two years and does not cite to any specific dates. Although the accident occurred on October 18, 2015, defendant was not arraigned until December 25, 2016. He pleaded guilty on April 21, 2017, but was allowed to withdraw his plea on August 2, 2017, because of an error in the calculation of his sentencing guidelines range. A new prosecutor and new defense attorney were placed on the case at the time. New defense counsel filed a motion to quash. The record simply does not reflect that defendant was denied the right to a speedy trial contrary to his blanket assertion.

Defendant contends that he "was improperly convicted of fleeing the scene when [he] was suffering from injury and immediately sought attention following the accident." We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in the light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the offense were proven beyond a reasonable doubt. *Id*. at 377-378. It is the role of the trier of fact to determine the weight of the evidence and evaluate the credibility of witnesses. *Id*. at 378.

MCL 257.617(1) provides:

The driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident upon public or private property that is open to travel by the public shall immediately stop his or her vehicle at the scene of the accident and shall remain there until the requirements of section 619[4] are fulfilled or immediately report the accident to the nearest or most convenient police agency or officer to fulfill the requirements of section 619(a) and (b) if there is a reasonable and honest belief that remaining at the scene will result in further harm. The stop shall be made without obstructing traffic more than is necessary. [Footnote omitted.]

The evidence presented was sufficient to convict defendant of failure to stop at the scene of an accident resulting in serious impairment. *Harrison*, 283 Mich App at 377-378. Pursuant to MCL 257.617(1), defendant did not remain at the scene of the accident until the requirements of MCL 257.619 were fulfilled. Defendant left the scene of the accident in the burgundy Charger.

Furthermore, defendant did not immediately report the accident to the police to fulfill the requirements of MCL 257.619(a) and (b), which applies if there was a reasonable and honest belief that remaining at the scene would result in further harm. Trooper Kieffer acknowledged that defendant's arm, three days after the accident, was in a sling or bandaged; however, there is no evidence that defendant sought medical attention or that remaining at the scene would result in further harm. Furthermore, there is no evidence that defendant immediately reported the accident. Defendant contends that "he tried to contact" Trooper Kieffer about the accident. Yet, there is no evidence that defendant actually called the police. Trooper Kieffer testified that no one called the police and identified himself as the driver of the yellow Charger; only Johnson and another witness, Davina Dennis, called the police. Because defendant left the scene of the

---

[4] MCL 257.619 sets forth a driver's responsibilities after being involved in an accident, including providing a registration and operator's license, and aid to an injured individual.

accident, and there is no evidence that doing so was necessary to prevent further harm, or that he reported the accident, the jury properly found defendant guilty beyond a reasonable doubt.[5]

## IV.  LESSER INCLUDED OFFENSE

Finally, defendant argues that he "should have been convicted, at most, of the lesser offense of reckless or careless driving and the Court's denial of said instruction denied [him] of his right to due process and a fair jury trial."  We disagree.

To preserve a challenge to jury instructions, a party must object to or request an instruction before the jury deliberates. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000).  At trial, defendant requested a careless driving instruction stating, "I'm going to be arguing and I think the evidence could support it that what he should be charged with and an instruction to that effect is careless driving and not reckless driving."  Therefore, defendant preserved the issue regarding a careless driving instruction for appellate review. However, the issue regarding a reckless driving instruction is unpreserved because defendant did not request that instruction before the jury deliberated.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion."  *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013) (quotation marks and citation omitted).  Even when instructional error occurs, "[r]eversal is warranted only if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative."  *Id*. (quotation marks and citation omitted).  We review unpreserved errors for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.  The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.  [*Id*.]

The trial court may give a *requested* jury instruction on a necessarily included lesser offense "if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it."

---

[5] Defendant did not submit his phone records or medical records to support his claims that he attempted to contact the police and then proceeded to a clinic or a hospital for treatment of injuries.  Although defendant asserted that his nephew required medical treatment, the driver of the burgundy Charger was capable of obtaining aid and, in fact, drove both men from the scene. Further, although defendant concludes that the statute is unconstitutionally vague, he failed to raise this issue in his statement of questions presented or explain or rationalize the claim. Accordingly, this aspect of his issue was waived.  MCR 7.212(C)(5); *Kevorkian*, 248 Mich App at 389.

*People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). Additionally, the *Cornell* Court noted that MCL 768.29 provides that "[t]he failure of the court to instruct the jury on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." *Id*. at 341.

On appeal, defendant conflates careless driving and reckless driving. At trial, defendant merely requested a careless driving instruction, arguing that the prosecution only had one witness that said he was speeding. The trial court denied giving the careless driving instruction stating, "[T]here's two different -- an independent witness and an expert that say that your client was travelling at a high rate of speed which I don't think is careless driving, I'm not giving that." Defendant did not request an instruction on reckless driving.

Careless driving and reckless driving are two different offenses. Careless driving, MCL 257.626b, is a civil infraction. MCL 257.907(1) provides that "a civil infraction shall not be considered a lesser included offense of a criminal offense." Therefore, careless driving is not a lesser included offense of reckless driving causing serious impairment of a body function, and the trial court properly denied that instruction. While the trial court's ruling was apparently based on its belief that defendant's high rate of speed did not warrant a careless driving instruction, we do not reverse where the trial court reaches the right result for a wrong reason. See *People v Lyons*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998) ("This Court will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason.")

As noted, defendant did not request an instruction on reckless driving as a lesser included offense of reckless driving causing serious impairment of a bodily function. However, even if defendant requested the reckless driving instruction, the greater offense did not require the jury to find a *disputed* factual element that is not part of the lesser included offense and a rational view of the evidence would not have supported it. Reckless driving, MCL 257.626(2), provides, in relevant part:

> Except as otherwise provided in this section, a person who operates a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

Reckless driving causing serious impairment of a body function, MCL 257.626(3), provides, in relevant part:

> [A] person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes serious impairment of a body function to another person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not less than $1,000.00 or more than $5,000.00, or both. [Footnote omitted.]

An instruction on reckless driving would have been improper because it was undisputed that Harden suffered serious impairment of a body function and the evidence did not support the instruction. Dr. Claire Jensen, a senior staff physician in the emergency department at Henry

Ford Hospital, testified that Harden was initially in serious condition with low blood pressure when she arrived at the hospital following the accident. Harden had a breathing issue and required endotracheal intubation and was placed on a mechanical ventilator. Harden's injuries included a subdural hematoma, pulmonary contusion, and clavicle fracture. Harden was admitted into the Intensive Care Unit in the hospital. Harden's additional diagnoses included acute respiratory failure, hypotension, acidosis, and hip and leg pain. After being released from the hospital, Harden did physical, occupational, and speech therapy to treat her injuries. However, Harden had chronic pain in her neck, back, and shoulder, and possible nerve damage.

Further, as defense counsel said in his closing argument: "[T]here is nobody in this room who would think that Ms. Harden didn't suffer, doesn't have, didn't suffer or still suffers a serious impairment to a body function. That's not the issue here. The issue is was he speeding? And I'm telling you now, or was he recklessly driving? That's the only issue." Therefore, where the greater offense did not require the jury to find a *disputed* factual element that is not part of the lesser included offense and the evidence did not support the instruction, the trial court was not required to give it. *Cornell*, 466 Mich at 357.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto